374·

MRS. RUTH E. HENDRIX, Trustee, and LEONARD MILTON HENDRIX, Cestui Que Trust, Complainants-Appellants, v. SADIE YANCEY and LUCILLE YANCEY BARKLEY, Defendants-Appellees.—355 S. W. (2d) 453.

Western Section.   August 29, 1960.

Petition for Rehearing Denied May 5, 1961.

Petition for Certiorari Denied by Supreme Court, March 10, 1961.

A. D. Walker, Jr., M. Watkins Ewell, Dyersburg, for appellants.

Weakley & Weakley, Dyersburg, for appellees.

CARNEY, J. The complainants, Ruth E. Hendrix as trustee and Leonard Milton Hendrix as cestui que trust, are the owners of a tract of land containing 3,287 acres more or less located in the extreme southwestern portion of Dyer County, Tennessee, generally referred to as Moss Island. This land was conveyed to the complainants on December 29, 1941, by B. L. Hendrix, husband and father of Ruth E. Hendrix and Leonard Milton Hendrix respectively. B. L. Hendrix purchased the real estate on December 3, 1923.

The description of the complainants' land as contained in their deed of record in Deed Book 65, page 296, of the Register's office of Dyer County, Tennessee, is as follows:

"Lying and being in the 11th Civil District of Dyer County, Tennessee and bounded and described as follows: Beginning at the edge of the low water mark on the right hand side of the old channel of the Mississippi Riper as it descends to where it empties into the present Mississippi River at a point due west of the sycamore marked 'J-M' stand-

ing on the left hand bank of said river, or old channel, just below the mouth of Bostic Slough; running thence West, passing a marked and blazed willow not far from low water mark, 910 poles to a stake and pointers due South of Murreau Michell's corner mentioned below; thence North passing two small maples and four cottonwoods, one marked 'M', Murreau Michell's corner; running still North passing another corner of Michell's to a dead cottonwood marked 'M' and a sycamore and cottonwood pointers standing on the south bank of said old channel of the Mississippi River; thence continuing still north with the West line of the tract of land sold and conveyed by Sears Lehman, Trustee, of the Boatman's Bank of St. Louis, Missouri, to C. G. Watkins, O. P. Bishop and A. E. Menzies by deed recorded in Book 41, page 461 of the records of the Register's Office for Dyer County, Tennessee to a stake on the North bank of the Obion River, sycamore and maple pointers, being the northwest corner of said tract, which contains 81 acres; thence in a southeasterly direction with the meanders of the Obion River to the point of beginning, containing 3287 acres, more or less (Deed Book 46, page 425)."

Prior to about 1853 this land was separated from the mainland of Tennessee and therefore of Dyer County by a chute of the Mississippi River. Sometime around 1853 there was an avulsion, the Mississippi River changed its course and the Obion River began to flow down this old chute of the Mississippi River, running southeastwardly and then southwestwardly and entering

the Mississippi River near Hales Point in Lauderdale County, Tennessee.

At the present time the Obion River is the northern and eastern boundary line of the complainants' 3,287 acre tract. There are other lands now lying west of complainants' land and east of the present channel of the Mississippi River so that Moss Island is no longer an island in the true sense of the word. M. E. Magee owns the land joining complainants' on the west and the defendants, Sadie Yancey and Lucille Yancey Barkley, own the land immediately to the south of the complainants' land and south of the Magee lands.

The defendants own approximately 2,400 acres of land conveyed in three separate tracts to their father, N. A. Yancey, in 1922. N. A. Yancey died in 1946 and the defendants inherited two-thirds interest in said land upon his death and the other one-third was conveyed to them by the deed of their sister, Grace Yancey Bird, and husband, R. L. Bird, of date September 15, 1937, of record in the Register's office of Dyer County, Tennessee, in Deed Book 60, page 405.

In addition to the 2,400 acres of land now owned by the defendants, N. A. Yancey owned other lands nearby and possibly adjacent thereto a portion of which was in cultivation. A portion of the Moss Island tract purchased by B. L. Hendrix has been in cultivation for many years. From 1922 until 1937 N. A. Yancey from time to time sold and removed timber from the lands now owned by defendants and the said B. L. Hendrix, husband of complainant, Ruth Hendrix, cut and removed timber from the Moss Island tract and there was never

any dispute over the location of the boundary line during the lifetime of N. A. Yancey.

Both N. A. Yancey and B. L. Hendrix were accustomed to having their employees check the line from time to time to make sure that unauthorized persons did not cut and removed timber from their respective lands. Sometime about 1946 the complainants through their local agent, Mr. Cogbill, began to question the correctness of the dividing line between the two tracts of land as contended by the defendants.

The complainants who are residents of the State of South Carolina accordingly about November, 1946, retained the services of Mr. C. B. Bailey a surveyor from Wynne, Arkansas, who attempted to establish the south line of the complainants' tract according to the calls in their deed.

Mr. Bailey established the southwest corner of the Hendrix land at a point 105.4 poles or 2481.6 feet due south from the point which defendants claimed to be the southwest corner of complainants' land. Later they had a surveyor from Jackson, Tennessee, Mr. E. R. Dike, to check Mr. Bailey's survey.

Thereupon the complainants brought suit under the authority of T. C. A. Section 16-606 and 16-607 averring that there was a dispute as to the location of the south boundary line of their tract of land and the north boundary line of the defendants' tract of land. Complainants' bill averred that there was no controversy among the complainants and defendants with respect to the true location on the ground of complainants' southeast corner but that the defendants were claiming that com-

plainants' southwest corner was located some 2700 feet north from complainants' true southwest corner. It was admitted that the south line of complainants' land and the north line of defendants' land marched together throughout the full length of complainants' south boundary line and that the defendants' north boundary line marched on further west beyond complainants' southwest corner with the south boundary of the Magee land.

The bill asked the court to locate on the ground the correct boundary line between the lands of the complainants and the lands of the defendants.

The strip of land in dispute is triangular in shape containing 448.18 acres according to the plat of a survey made by A. T. Rogers, surveyor, on behalf of complainants in September, 1953. Point "C" on said plat represents the apex of the triangle being the agreed southeast corner of complainants' land. Point "D" on said plat represents the southwest corner of complainants' land as contended by the complainants.

This point "D" is within 75 feet of the point established by Mr. Bailey as the southwest corner of complainants' land, Point "E" represents the southeast corner of the Magee land, formerly Michell, and the point claimed by defendants as the southwest corner of the Hendrix land. Point "E" is 2550 feet north of point "D" according to Mr. Rogers' survey. The hypotenuse of the triangle is the line from "E" to "C" which defendants claim to be the correct south boundary of the Hendrix land.

The defendants contended that point "E" on the Rogers plat is the true southwest corner of the com-

plainants' Moss Island tract of land and that the complainants' south line and therefore the defendants' north line runs south 87° 27' east along a well marked line from "E" to point "C" the agreed southeast corner of complainants' land. On the plat of Mr. Rogers, complainants' surveyor, this line from point "E" to point "C" is indicated by a dotted line which Mr. Rogers characterized as a line indicated by "old blazes on timber" and Mr. Rogers shows this line as running south 80° 31' east instead of south 87° 27' east.

All of the disputed strip is in timber as well as a great portion of the lands adjacent thereto. These lands are in the low overflow area of both the Mississippi River and the Obion River; they are heavily timbered with a great deal of undergrowth and have never been in cultivation.

The original bill was filed in 1948 and the complainants took the deposition of the surveyor, Mr. C. B. Bailey, and also the deposition of Mr. E. R. Dike, a surveyor of Jackson, Tennessee, who was employed in 1947 by the complainants to check the survey made by Mr. Bailey.

The defendants took the depositions of Lawrence Perryman, R. L. Bowles, G. C. Johnson, Walter H. Sanders, R. L. Bird and Willie Riggs all of whom had personal knowledge of the location of the southwest corner and the south boundary line of the Moss tract as contended for by the defendants. In addition the defendants took the deposition of L. O. Brayton, Sr., a civil engineering graduate from the School of Engineering of Syracuse University in 1909 and who had lived in Dyersburg, Tennessee, and done engineering and surveying work in the area since 1916.

Former Chancellor, V. N. Holmes, one of the counsel for the complainants became ill and the cause remained in court in a state of suspense until about 1954 when the present solicitors for complainants, Mr. Ewell and Mr. Walker, were retained by the complainants. They re-opened the case and had an additional survey of the south line made by Mr. A. T. Rogers, engineer of Memphis, Tennessee, mentioned above.

Complainants took the depositions of surveyor Rogers and his employer, J. S. Harris, C. E., of Memphis, Tennessee. Also they took the depositions of Jesse Valentine, G. J. Berry, A. D. Walker, Jr. and B. L. Hendrix.

Thereupon the defendants took the depositions of L. O. Brayton, Jr. and U. G. Emge, surveyors, both of whom had been associated with L. O. Brayton, Sr. who had died pending the litigation. The complainants further examined the witness, R. L. Bird, who is a brother-in-law of the defendants and was a son-in-law of N. A. Yancey. All of the said depositions were filed and offered in evidence.

Upon the hearing below the Chancellor found that the correct boundary line between the tract of land owned by complainants and the lands owned by defendants was the line insisted upon by the defendants. From his opinion we quote as follows:

"Both complainants' and defendants' predecessors in title agreed by a consent decree that the location of the line in question was as established by S. P. Fowlkes, County Surveyor of Dyer County, Tennessee in 1896, as shown by decree in the case of Moss v. Jones, et al, entered of record in Minute Book 1, pages 474-477. It is the opinion of the

court that the present complainant and defendants are bound by said decree and agreement entered into by their predecessors in title. Likewise, it is the opinion of the court that they are bound by their own pleadings as to agreeing that such a line is the correct line, and the boundary line between the two parties.

"Said surveyor was instructed to begin his survey at the southeast corner of the McLemore and Terrell Grant at a point marked by two small maples and four cottonwoods, one marked (M) Moore Michell's corner. It is the opinion of the court that this corner is one and the same point as the southwest corner of Grant No. 96 known as the Armstrong Grant. The surveyor was instructed to survey said line running from west to east to its eastern termination. The surveyor reported his action to the court, stating that he had complied with said instructions and had surveyed and 're-marked' said line from its beginning point as set out above to a point on west bank of old channel of Mississippi River opposite Bostick Slough.

"In the opinion of the Court, the above designated beginning point is where at the time proof was taken in this case a wire fence running west between the Yancey and the Magee property intersects a fence running north on the west line of the Hendrix-Moss Island property, and is the west end of the disputed boundary line.

"Considering all the evidence, the court is of the opinion that there are now located on the ground sufficient markings from which the controverted line

can be determined. The court therefore directs that a competent surveyor be employed by the parties to carry out the instructions of the court in placing the line on the ground.

"The said surveyor is hereby directed to begin at the above designated corner and to proceed in an eastwardly direction following the physical evidence of the line which has been heretofore marked by S. P. Fowlkes, L. O. Brayton and others. As the surveyor proceeds along this line, he will establish a bearing at which the line runs. If after having established said bearing the surveyor is unable to trace the line, from the markings on the ground, to its furthermost point on the Obion River, he is directed to continue along the course at the same bearing which he has previously established to the Obion River, marking the course as he proceeds. Upon completion of the above the surveyor will make a report to the Court.

"It is the opinion of the court that the line run by Fowlkes in 1896 followed a former line that heretofore had been run, and his report shows that he remarked the line that he ran."

The complainants have appealed to this Court and assigned errors assailing the action of the Chancellor.

Stated as succinctly as possible, the complainants contend that their southwest corner is located about 2500 feet south of what was originally Michell's southeast corner, now Magee's southeast corner; that the calls in their deed and all the prior deeds in their chain of title back to the grant from the State of Tennessee call

for a southwest corner south of Michell's southeast corner. However, none of the deeds give the distance to Michell's southeast corner.

On the other hand, the defendants contend now as they did in the court below that the calls in all the deeds of complainants' chain of title calling for a corner south of Michell's southeast corner are erroneous and that at all times the southeast corner of Michell, now Magee, has been the southwest corner of the Moss Island tract, now the Hendrix lands; that this corner is fully established not only by all the surveys of and deeds to the adjoining tracts of land but also by an agreement in writing between the complainants' predecessor in title and the defendants' predecessor in title, which agreement was later approved by the Chancery Court of Dyer County, Tennessee.

The complainants deraign their title from Grant No. 16093 for 3,000 acres of land issued by the State of Tennessee on June 7, 1867, to Charles C. Moss. This grant was laid on top of the southwestern portion of Grant No. 96 for 5,000 acres to Martin Armstrong issued by the State of North Carolina July 10, 1788. The west line of the Tennessee grant was co-extensive with the west line of Grant No. 96 and the southwest corner of the Tennessee grant was placed on top of the southwest corner of the Martin Armstrong grant and the south line of the Tennessee grant was on top of the south line of the Armstrong grant except of course, the southeast corner of the Armstrong grant extended farther east than did the Tennessee grant.

In the case of Moss v. Gibbs, 57 Tenn. 283, in the year 1872, the Supreme Court of Tennessee held that

at the time of the execution of the Grant No. 96 to Martin Armstrong by the State of North Carolina the lands covered by said grant being located west of the Mississippi River were not a part of the State of North Carolina but belonged to Spain and therefore said grant by North Carolina was a nullity.

A large portion of the lands owned by the defendants and all of the lands lying near the disputed southwest corner are part of the lands covered by Grant No. 734 issued by the State of North Carolina to McLemore and Terrell. A copy of the survey made of the McLemore and Terrell grant on March 5, 1824, is as follows:

"Survivor's Record No. 1, Page 60

Scale of 200 poles per inch.

"State of Tennessee, 13th District. By virtue of an Entry No. 734 dated 8th March 1823, founded in Military Warrant No. 926 for Twenty Five Hundred and Sixty acres. I have surveyed for John Terrell Six Hundred and Thirty two acres & 151/160 and as John C. McLemore, Agent for the University of the State of North Carolina, Eight-Hundred Thirty Four acres and 9/160 of land in said District —in the 2nd Section and Tenth and Eleventh Ranges on an island in the Mississippi River known by the name of Cut Off Island. Beginning at two small elms at the lower water point of said island in the 11th Range, running up with the bank of the main channel and Western chute North 25° East 40 poles, north 4° East 70 poles; North 18° West —160 poles in all Two Hundred and Seventy poles to a Box Elder and Sycamore marked .M. at the upper point of said chute. North 55° East—Three

Hundred and Fifty poles to two Cottonwoods, an Elm and Sycamore, marked 'M' in the West boundary line of Grant No. 96 from the State of North Carolina to Martin Armstrong for 5000 acres. Thence south with said line according to the Magnetic Needle, Two Hundred and Sixty six poles to two small maples and four small Cottonwoods, one marked M. the South West corner of said Grant No. 96. Thence East according to the Magnetic Needle with the South boundary of said Grant Six Hundred and Eighty nine poles to a cottonwood marked M on the bank of said Eastern chute of the Mississippi River. Then down with the meanders of the same South 40 poles. South 30° West 100 poles. South 40° West 40 poles. South 67° West 60 poles, South 72° West 200 poles North 77° West 600 poles making all One Thousand and Forty poles to the beginning, containing in the above buts and bounds Fourteen Hundred and Sixty nine acres. Said Entry intended to cover 2560 acres but no more could be obtained for the interference of an older claim granted by the State of North Carolina by Grant No. 96 to M. Armstrong and natural boundaries which leaves a balance of said warrant unsatisfied. One Thousand and Ninety Three acres, to-wit 470 acres and 9/160 to said Terrell and 22 acres and 151/160 to said McLemore as agent as aforesaid yet to be satisfied. Surveyed 5th March 1824.

John Murray D. Surveyor"

It is to be noted that this survey joins the Armstrong Grant No. 96 on two sides. It runs magnetic south 266 poles to the southwest corner of Grant No. 96 and thence

magnetic east with the south boundary of No. 96 689 poles to the bank of the eastern chute of the Mississippi River.

The record is complete with copies of all the deeds covering the disputed strip of land and all the adjacent lands. It would prolong unduly this opinion to discuss in detail the calls and distances set out in these various deeds.

In 1896 Mrs. Ann E. Moss was the owner of the lands now owned by the complainants. R. P. Jones was the owner of the approximately 1,000 acres located west and south of her tract of land. This land was conveyed to Jones by deed of L. M. Mitchell dated December 28, 1894, recorded in Book 9 page 357 of the Register's office of Dyer County. We copy the description from said deed as follows:

"* * * a certain piece or parcel of land lying and being situated in the Eleventh Civil       of Dyer County, State of Tennessee and bounded and described as follows to wit: Beginning at Four cottonwoods and Two maples Wm Hunts South East corner also recognized as the south west corner of Martin Armstrong 5000 acre Grant No 96 runs thence East with Armstrongs south line 689 poles to a stake on the West bank of the Eastern chute of the old Channel of the Miss. River in the South line of said Armstrong Grant No. 96; thence down said chute as it meanders 40 poles to the North East corner of the Parm Sugg. land formerly owned by H. F. Rutherford; thence south 87° West with their line to the bank of the Miss. River; thence up the same as it meanders so far that by running North

87° East will strike a forked cottonwood standing on the East bank of the Tennessee chute in front of where Michells gin house formerly stood; thence in a North Easterly direction to the upper North East corner of the Terrell & McLemore 1467 acre tract of land and in the West line of Armstrongs Grant No. 96; thence South with said Armstrongs west line 266 poles to the Beginning containing by estimate one thousand acres more or less.''

Apparently there was dispute between Mr. Jones and Mrs. Moss as to the boundary line between their said tracts of land. On September 29, 1896, they entered into a written agreement settling certain contractual obligations between them concerning the cutting and removal of timber, etc. Said written agreement also contained the following provision concerning the establishing and settling of the boundary line between the lands of Mrs. Moss and the lands owned by Jones:

''* ** It is hereby agreed by both parties that the dividing line running North and South between R. P. Jones land and Mrs. Ann. E. Moss cutoff island tract of land, shall be surveyed and plainly marked and established as the dividing line, and it is further agreed, that the line running East & West is to be surveyed and established as a permanent dividing line; the said East & West line to commence at the South East corner of the McLemore & Terrell grant at a point marked by two small maples and four Cottonwoods and Marked 'J. M.' Moreau Michell corner, and the said East and West line is to be seen from said corner, with the same variations as the other lines to about the mouth of Bostick Slough, on the Old Channel of Mississippi River.''

Litigation ensued between Mrs. Moss and R. P. Jones, et al. and on the 24th of November, 1897, the Chancery Court of Dyer County in the cause of Mrs. Ann E. Moss v. R. P. Jones, et al., Minute Book I, page 477, entered a decree containing the following provision relative to the boundary line between them:

"And, it is further ordered, adjudged and decreed by the Court that the line running east from one of the intermediate southeast corners of the McLemore and Terrell entry, said corner being marked three cottonwoods, two maples, and other pointers, to a point on the west bank of the Old Channel of the Mississippi River, opposite the mouth of Bostick Slough, said line being the division line between the land of the complainant, Mrs. Annie E. Moss and defendant, R. P. Jones. Said line being the old original line known as the south boundary line of the Armstrong Grant and said line being run remarked and established by the County surveyor, S. P. Fowlkes, in this cause on the 16th day of November, 1894, as the dividing line between the land of the complainant, Mrs. Annie E. Moss and the land of the defendant, R. P. Jones, and the Court so adjudges and decrees that said line, above mentioned, surveyed, run and established and located by said County surveyor is the true dividing line between the land of the complainant and the defendant."

It is well settled in Tennessee that a decree of a court of competent jurisdiction is conclusive between the parties and their privies. Cheatham v. Allen (1951) 192 Tenn. 535, 241 S. W. (2d) 559.

■■ Also it is clearly the rule that parties will be estopped to question a boundary line established by agreement even though it may be afterwards demonstrated that such line was erroneously fixed. Such agreements may be made by parole and not within the statute of frauds. Rogers v. S. W. Taylor & Co., 2 Tenn. App. 445; Winborn v. Alexander, 39 Tenn. App. 1, 279 S. W. (2d) 718.

■ In the present case the complainants completely ignored the former court decree in their proof. They relied principally upon the testimony of the four surveyors who attempted to locate the complainants' southwest corner by running only the one south line according to the precise and literal wording of the calls in complainants' deed.

These four surveyors, none of whom had been assustomed to making a survey in Dyer County, Tennessee, did not purport to locate the southwest corner by finding and following any regularly marked or established line. They found no marks or monuments of any kind as they ran the line from southeast to southwest through the woods. They found no evidence of any marks or pointers about the point which they determined to be the true southwest corner. They made no effort whatsoever to locate and follow the line agreed upon by Mrs. Moss and Mr. Jones and which the decree of the Chancery Court recited was *rerun* and *remarked* by the County Surveyor.

Only two laymen attempted to locate the southwest corner of complainants' land as surveyed by Mr. Bailey and the other surveyors for complainants; Mr. G. J. Berry, of La Center, Kentucky, testified that in 1924

he cut timber for Mr. Hendrix from the Moss Island tract and that the southwest corner was marked by an iron pipe 18 inches above the ground located about 2600 feet south of point ''E'' on Surveyor Rogers' plat and 2600 feet south of the southeast corner of the Chic Farm Land Company tract now owned by Magee. However Mr. Berry did go further and corroborate the defendants' witnesses by testifying that the south line of the Moss Island tract was a well-marked plainly painted line going east from the southwest corner and that no one would have any trouble in following it.

Jesse Valentine, an employee of Hendrix since 1939, testified that the southwest corner was marked by an iron pipe which had been found by some.hunters.

On the other hand the testimony of the defendants was very cogent and convincing. The principal expert witness offered by defendants was L. O. Brayton, Sr., a · civil engineer, a graduate of Syracuse University and a resident of Dyersburg, Tennessee for many years. He testified that he had surveyed nearly all of the lands located in this vicinity at various times and had had occasion to study and plat nearly all of the grants by North Carolina and Tennessee covering the lands in this area.

. He introduced in evidence a large plat of the entire Moss Island area from the Obion River to the Mississippi River and south to Lauderdale County. This plat was prepared for use by the State of Tennessee in litigation with the State of Arkansas in the U. S. Supreme Court over the title to the Moss Island area apparently before the present litigation developed. It shows the

Martin Armstrong Grant No. 96, the McLemore and Terrell Entry for 1436 acres and how they fit together.

Further Mr. Brayton testified that about 1918 he became a part owner of the real estate referred to in the record as the Chic Farm now owned by Magee which embraced a part of the lands formerly owned by Murreau Michell and that the southeast corner of Murreau Michell was coextensive with the southwest corner of the Moss land now owned by Hendrix. Mr. Brayton further testified that this point was located at the intersection of two fences, one running north and south along the west line of the Chic Farm property, now Magee and the west side of the Hendrix land, and the other running west and along the south line of the Chic Farm property and north line of the Yancey property.

Sometime around 1918 Mr. Brayton had occasion to rerun the south line of the Moss land at the request of the then owners. He was familiar with the agreement signed by Mrs. Moss and Mr. Jones and approved by the Chancery Court of Dyer County settling the boundary line between the Moss property and the Jones property (later Yancey). He said he found the south line well-marked by hack marks and also painted all the way through good timber to a branch of Bracken Lake also called Nush Puckana. From this point on east to the Obion River the land dropped very sharply in elevation (being formerly a part of the Mississippi River) and the line was not well-marked from Bracken Lake on to the bank of the Obion River across this lowland.

Mr. Brayton testified that there was no corner of any grant in that area that was any more well-known and

established than the southwest corner of Martin Armstrong Grant No. 96. Mr. Brayton said that the south line according to his survey did not run due east and west but that in going from the southwest corner over to the Obion River the line ran at a bearing of south 87° 27' east.

In 1920 there was a lawsuit in the Chancery Court of Dyer County between Jacocks and Farley also involving the location of the south line of the Moss land. Mr. Brayton made surveys of the area in preparation for that lawsuit and testified as a witness. Jacocks was successful. He filed in evidence in this cause a plat which was Exhibit 2 to his deposition in the cause of Jacocks v. Farley. Lands owned by the Jacocks heirs are part of the lands owned by the defendants. This exhibit shows the southwest corner of the Martin Armstrong Grant No. 96 to be co-extensive with a corner of Lot No. 7 in the division of the lands of Michell allotted to William Hunt and fully supports the testimony of Mr. Brayton as to the present location of the southwest corner of the Martin Armstrong Grant No. 96.

Mr. U. G. Emge, a civil engineer, graduate of the engineering department of Purdue University and a resident of Dyersburg, Tennessee, since 1941 was also a witness for defendants. Mr. Emge had been associated with the L. O. Brayton Engineering Firm and was familiar with Mr. L. O. Brayton, Sr.'s former survey of the disputed line. He testified that in October, 1946, he traced the south line between the Hendrix and the Yancey land beginning at the southeast corner of the Chic Farm Land at the intersection of the two wire fences. He set his compass on the line at a bearing of

south 87° 27′ east and ran the line without difficulty. He testified that he found the line well-marked for a distance of 13,000 feet and he enumerated in detail the description of the trees, the nature of the marks and the distances along the survey at which he found these various trees blazed and/or marked; that the marks were old. He testified that his survey from the southwest corner to the southeast corner checked within 10 feet of a survey which Mr. Brayton had previously run from the southeast corner to the southwest corner; that the entire line was 15,410 feet long and that the last 2,000 feet through the lowlands consisting mostly of willows near the southeast corner was not well-marked.

Mr. Emge further testified that again in 1951 he went down with Mr. R. L. Bird, brother-in-law of defendants, and reran the entire line without difficulty.

The lay witnesses offered by the defendant, namely Mr. Perryman, Mr. Bowles, Mr. Johnson, Mr. Sanders and Mr. Riggs were all very clear and explicit in their testimony as to the location of the southwest corner of the Hendrix land as being at the intersection of the two wire fences, Magee's southeast corner. These witnesses had lived in the Chic community for many years, some of them all of their lives. Some of them had worked for Mr. Yancey and some of them had worked for Mr. Hendrix or some of the former owners of the Moss land. All of the witnesses testified that the line was clearly marked from the southwest corner beginning at the intersection of the wire fences over to as far as Bracken's Lake and that from time to time the line had been repainted, sometimes by employees of Mr. Yancey or his predecessors. One of the witnesses testified that he

remembered helping to paint the line himself as far back as 1912 because that was the year he married and that we was working by the day for Mr. Weaver, manager of the Moss land at the time.

From our study of the entire record in this case we hold that the Chancellor was eminently correct in locating the southwest corner of the Hendrix land at the southeast corner of the Magee property at the intersection of the two woven wire fences and properly ordered the survey to be run southeastwardly along this marked line to the southeast corner.

The assignments of error are therefore respectfully overruled, a decree will be entered affirming the decree of the Chancellor and the cause will be remanded for further proceedings consistent herewith. The costs of this apepal are taxed against the appellants and their sureties.

Avery, P. J. (W. S.), and Bejach, J., concur.