In the Matter of the WILL of CHARLES E. PADGETT,
Deceased. —364 S. W. (2d) 947.

Middle Section at Nashville. July 27, 1962.

Certiorari Denied by Supreme Court December 14, 1962.

Thomas E. Humphrey, Jr., Columbia, for Mrs. Charlotte Scott Padgett, Executrix.

Paul F. Bumpus and Harry Phillips, Nashville, for Cecil Glenn et al.

Shelton & Shelton, R. L. Harris, Jr., Columbia, for Elizabeth Mimms and Charles R. Padgett.

I

SHRIVER, J. This suit involves two questions viz., (1) can either of two holographic instruments be sustained as the last will and testament of Charles E. Padgett, deceased, (2) If so, which of said instruments is his last will and testament.

·· In the assignments of error, brief and argument of appellants a very clear statement of the case is made substantially as follows;

The decedent, a prominent Maury County funeral director, left two contradictory handwritten instruments. One was dated April 10, 1959 and is generally referred to as the "April will". The other has two dates, January 15, 1959 at the top of the first sheet, and August 31, 1959 at the bottom of the second sheet and is generally referred to in the record as the "Double-dated will".

Mrs. Charlotte Padgett, the surviving widow, was named executrix in both instruments. A comparison of the two wills reveals that the widow would receive a somewhat larger amount under the double-dated will than under the April will.

The executrix probated in common form the April will on March 9, 1961 following the death of the testator on March 1, 1961 and qualified as executrix thereunder. Thereafter, she filed a petition for revocation of the probate of the April will and tendered both instruments for consideration asking that the Court determine which of said paper writings is the last will and testament of Charles E. Padgett, or, if either of them is the last will and testament of the decedent.

The cause was transferred to the Circuit Court for trial and at the conclusion of the proof on motion of the appellees the Trial Judge withdrew the case from the jury over the objection of appellants who moved for a directed verdict in favor of the April will.

After holding the matter under advisement for several days the Trial Judge directed a verdict in favor of the double-dated will and against the April will, from which judgment an appeal was perfected to this Court.

The appellants Cecil M. Glenn, etc. et al., are seven nieces and nephews of the decedent who would share per stirpes under the residuary clause of the April will, but who are excluded from benefits under the double-dated will.

Appellees, Elizabeth Mimms and Charles R. Padgett, are the residuary legatees of the double-dated will and would share on a per stirpes basis under the April will.

The executrix, Mrs. Charlotte Padgett, while asserting her neutrality and her willingness to serve under either will, in her reply brief and argument filed in this Court, takes the position that we should sustain the action of the Trial Court.

The executrix (formerly Miss Charlotte Scott), an intimate personal friend of decedent's first wife who died several years ago, married the decedent December 4, 1959, several months after both wills had been executed.

In the Trial Court the appellants were the proponents of the April will and contestants of the double-dated will, while appellees were proponents of the double-dated will and contestants of the April will.

## II

### Assignments of Error

There are seven assignments of error which complain of the action of the Trial Judge in directing a verdict in favor of the double-dated will and in overruling the motion of appellants for a directed verdict that the paper writing dated April 10, 1959, is the last will and testament of Charles E. Padgett, deceased, and in adjudging the costs against the appellants.

## III

The record supports the following facts for which a proper predicate was laid in the pleadings:

The April will was witnessed with all the formalities of an attested will and meets the requirements of such will as well as those of a holographic will. It was executed at the place of business of the decedent which was a Funeral Home, and witnessed by Frank B. Sowell and Robert Young to whom the testator had sold his interest in the business.

These two witnesses signed at the request of Mr. Padgett and in his presence and in the presence of each other and the testator indicated to them that the paper was his will.

This will states on its face, "Now Charlotte will have a list of my property", and enclosed in the same envelope with the April will was a separate piece of paper listing the properties owned by the testator.

The executrix testified that the testator handed her a sealed envelope on February 9, 1960 with the name "Miss Charlotte Scott" written on the outside thereof and asked

her to put it in her lockbox at the bank. She further testified that when this envelope was opened following the death of the testator it contained the April will and a list of the property owned by the deceased.

She also testified that in July 1960 the testator bought some property next door to the funeral home and asked her to take the envelope out of the lockbox and bring it back to him, saying that he had something else that he wanted to write in it. She delivered the envelope to him and he kept it for a day and night and then returned it to her and she placed it back in her lockbox making a notation of the date on the envelope.

About two days later the testator approached her again and said, ''Charlotte, you are going to have to bring me that paper back * * * because I have something else that I want to write on my listing of property.'' She again removed the envelope from the lockbox and handed it to the testator who shortly afterwards, and before the will was returned to the lockbox, developed a heart condition and went to the hospital. Just before he entered the hospital he said to his negro maid, Ruth Harlan, ''Look in my inside coat pocket and get those papers and give them to Miss Charlotte when she comes''. The maid testified that she found the envelope unsealed in the coat pocket of the testator, put it in a cabinet drawer and when Miss Charlotte came she gave the envelope to her. The executrix (Miss Charlotte) testified that she sealed the envelope with scotch tape and put it back in the lockbox and that, when the testator asked her the next day if Ruth gave her that paper, she responded, ''Yes, she did Pady and upon my word of honor I did not read it.'' The envelope containing the April will and the list of property owned by decedent remained in the

lockbox until it was removed by her after the decedent's death.

When this envelope was opened following the death of the testator it contained the April will together with a list of properties owned by the testator, including the additions to the list made on the two occasions when the envelope had been removed from the lockbox in July or August 1960.

As to the double-dated will, it is written on two pieces of paper with the date January 15, 1959 appearing at the top of the first page and the date August 31, 1959 appearing at the bottom of the second page.

No proof was offered as to which of these dates is the correct one or as to the actual date on which this instrument was signed. The testator made no mention of the double-dated will to the testatrix or to any other person so far as the record shows. No witness saw him write it or sign it. The envelope in which this will was sealed did not contain any list of the properties of the testator.

On February 9, 1960, more than a year after the first date appearing on the double-dated instrument, and more than five months after the second date appearing on the said instrument, the testator, as stated hereinabove, gave the executrix the envelope containing the April will together with a list of his properties and twice during the Summer of 1960, about a year after the last date on the double-dated instrument, he asked that the April will be removed from the lockbox and returned to him in order that he might make additions to the list of his properties attached to said April will.

The negro maid to whom the decedent never mentioned the envelope containing the double-dated will which was

found in the cubby-hole of his desk at his residence, stated that she first noticed this envelope in the desk of decedent in January or February 1960. She pointed out this envelope to the executrix and, after her marriage to the testator the executrix placed it in her lockbox without his instructions so to do, and this was about two or three weeks before his death. She did not know what was in the envelope until she opened it after the death of the testator.

After reading both instruments on Saturday March 3, following the testator's death, the executrix probated the April will in common form on March 9, 1961.

Thereafter, on the advice of her attorney, she submitted both instruments for consideration of the Court.

## IV

Must we conclude, as did the Trial Judge, that the date August 31, 1959, appearing on the second page of the double-dated will, is conclusive of the question as to the date said will was signed by the testator? If so, of course, this becomes the last will and testament of the deceased and, since it is in conflict with the provisions of the April will it works a revocation of that will.

A careful consideration of this record leads us to the conclusion that the determinative question before us is, whether or not there is material evidence to support a contrary view and, therefore, requiring the submission of the case to the jury.

Counsel for appellees argue that it is logical to conclude that the double-dated will was all written the same date. They say that it is reasonable to assume that the paper writing dated January 15, 1959 was the first page of

a complete will and that the deceased desiring to make a different disposition of property than that contained on the second or following pages of said January 15, will, destroyed said page or pages. This assumes that the first page was a part of a fully executed will and that the second page dated August 31, 1959 is a codicil thereto.

However, on page six of the brief of appellees the following appears;

"Reference to a photostatic copy of the August 31, 1959 document, Tr. 132, reveals perfect continuity throughout the document and especially between the first and second pages. Both sheets of paper are upon the stationery of Oakes and Nichols and the appearance of the writing, the pen used and the amount of ink flowing from the pen does not reveal any distinguishing characteristics between the two sheets of paper."

We are impressed that the photographic copy of the double-dated will appearing in the record at page 132 supports the conclusion that the entire document was written at one sitting by the decedent with the same pen and that both sheets were written at the same time. The fact that both pages are on the letterhead of Oakes and Nichols Funeral Home is significant and, as stated in the quotation of counsel hereinabove, the appearance of the writing is such as to indicate that the two sheets of paper were written at the same time and, therefore, either the date on the first page or that on the last page is a mistake. We agree with counsel for the appellants that there is no proof in the record except the instrument itself to support the theory that the first sheet of the double-dated will was written on January 15, 1959 and

the second page on August 31, 1959, or that the second page was written as a codicil to the first. In this situation we also agree with counsel for appellant that there is no presumption as to which date is correct in the absence of proof.

At another point it is suggested by counsel for appellees that the double-dated will was kept by the testator in his private desk along with other valuable papers.

We are unable to find any proof in the record that any other valuable papers were kept by the testator in the place where this so-called double-dated will was found.

A former requirement in this State that existed for many years was that a holographic will, to be set up and probated as that of the decedent, must have been found among his valuable papers or lodged in the hands of another for safekeeping. While this requirement has been removed, we think some significance must be attached to the fact that the will of April 10, 1959 was lodged with the executrix for safekeeping in her lockbox along with an itemized list of the properties of the deceased, which list is mentioned in the will itself, while, on the other hand, the double-dated will was found by the maid in a cubby-hole in a desk in a sewing-room and was never mentioned to the executrix nor to the maid, nor, as far as the proof shows, to anyone else as being the will of the deceased. The executrix placed the April 10 will in her lockbox at the express direction of the decedent while the double-dated will was taken in possession by her without his direction or without his having mentioned it to her.

In other words, the evidence clearly indicates that the decedent regarded the April 10 will as being of impor-

144

tance and the circumstances would indicate that he considered it to be his will, whereas, he did not, apparently, attach any significance to the double-dated will. This attitude and action does not support the idea that he signed the double-dated will on August 31, 1959 with the intention of revoking the April will.

■ It is a cardinal rule and pole-star of the law of wills that the intention of the testator should prevail. Smith v. Weitzel, 47 Tenn. App. 375, 338 S. W. (2d) 628.

Some significance should also be attached to the fact that the decedent caused the April 10 will, which was entirely in his own handwriting and signed by him, to be witnessed and signed by two witnesses, while the double-dated will was not subjected to this formality.

■ As is said in Jarman on Wills, Sections 170, 171, the presumption is always strongly adverse to the later unfinished instrument materially altering or controlling a will deliberately framed, regularly executed, recently approved, and supported by previous and uniform dispositive acts. Also see Prichard on Wills, Sec. 246.

■ As has been held in many of our cases, it is for the jury to determine from all the evidence, both intrinsic and extrinsic whether or not the decedent intended the instrument to operate as a will.

■ There can be no exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the evidence upon the issues to be tried. Smith v. Weitzel, 47 Tenn. App. 375, 338 S. W. (2d) 628; Scott v. Atkins, 44 Tenn. App. 353, 371, 314 S. W. (2d) 52; Curry v. Bridges, 49 Tenn. App. 395, 325 S. W. (2d) 87.

■ We are of opinion that the evidence in this case raises an issue for submission to the jury and that it was error on the part of the Trial Judge to direct a verdict.

■ We are also of opinion that this is a legitimate and necessary proceeding on behalf of the executrix in order to properly carry out her duties and, therefore, the costs should have been adjudged against the estate and not the appellants.

It results that assignments Nos. 1, 5 and 7 are sustained, the judgment of the Trial Court is reversed and the cause is remanded for a new trial. The costs of the cause, including the costs of the appeal, will be taxed as an expense of the estate.

Reversed and remanded.

Humphreys and Chattin, JJ., concur.