**Alvin W. BOYD, et al.,
Plaintiffs-Appellants,**

v.

**Mary B. BOYD, Defendant-Appellee.**

Supreme Court of Tennessee,
at Nashville.

Nov. 19, 1984.

William H. Boyd, Nashville, for plaintiffs-appellants.

Daniel H. Rader, II, Moore, Rader & Clift, Cookeville, for defendant-appellee.

## OPINION

HARBISON, Justice.

The basic facts of this will contest case were accurately stated by the Court of Appeals as follows:

"Leaving five children surviving her, Mattie Boyd, died on February 28, 1981, just short of her ninety-sixth birthday.

She left behind two handwritten wills, the first dated July 25, 1974 and the second dated August 29, 1977. The 1974 will was signed by two witnesses. While the 1977 will recited that it was witnessed by the same two persons, they testified that they knew nothing about the latter will.

"In the 1974 will, Mrs. Boyd left some specific property and cash to her two daughters and two grandsons, some property to one son, and then divided the remainder of her property among the five children equally. In the 1977 will Mrs. Boyd omitted the specific gifts and called for an equal division of the property among the children."

The jury found in favor of the 1974 will. Its verdict was approved by the trial judge and affirmed by the Court of Appeals. For reasons hereafter stated, we reverse and remand for a new trial.

Two of Mrs. Boyd's sons were named as co-executors in each of the documents. Four of the children propounded and sought to uphold the 1977 will. One of the daughters contested it upon grounds of undue influence, lack of mental capacity and lack of testamentary intent, contending that the document was merely a draft or an incomplete instrument. The latter contention arises from the fact that testatrix wrote in her own handwriting on the back of the single-page document that it was witnessed by the same two persons who had in fact witnessed and signed the 1974 will. Appellants contend that she intended the 1977 will to operate as a holographic will, which, by statute, does not require attesting witnesses but does require two persons to identify the handwriting of the testator.

T.C.A. § 32-1-105 provides:

"No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and his handwriting must be proved by two (2) witnesses."

■ After carefully reviewing the lengthy record, we are of the opinion that the Court of Appeals correctly concluded that the issues of testamentary intent and testamentary capacity were properly submitted to the jury, although, like the Court of Appeals, we find that the evidence pertaining to lack of testamentary capacity was "slight" indeed. Nevertheless, in view of the age of the testatrix and the fact that she did not actually have the second will witnessed as her handwriting indicated, and because the two questions are so intricately intertwined, we are of the opinion that these issues were properly submitted to the jury. We find no evidence of undue influence on the part of Alvin Boyd, accused by his sister of having instigated or caused the second will to have been written. There is no question but that it is in her handwriting, and there is no testimony that at any time near the date of its execution he exercised any sort of dominion or undue influence over her. Accordingly we are of the opinion that the trial court erred in submitting that issue to the jury and in charging the jury concerning "suspicious circumstances."

Since the issues presented to the jury were extremely close, the charge given to them by the trial judge was most important.

■ The 1974 will, in favor of which the jury found, was attested by two witnesses. According to the testimony of those witnesses, it probably met the legal requirements for an attested will. Nevertheless it was offered for probate as a holograph. Throughout the pleadings and the trial it has been insisted that the document was a valid holographic will. Under those circumstances attestation is not essential, although, of course, the testimony of the subscribing witnesses may well serve to verify the handwriting of the decedent, her testamentary intent and her testamentary capacity.

■ In that respect, however, both testamentary intent and capacity were conceded as to the 1974 will. At the date of its execution testatrix was eighty-nine years of age, but all parties agree that she was in

good general health, was mentally alert, and that she had full capacity to dispose of her estate. Unless it was revoked by the testatrix, all parties agree that it would be a valid will. Some question is raised on appeal with respect to an earlier document, executed in April 1974, in which the testatrix disposed of numerous items of personal and household belongings, making essentially an equal distribution of these among her children. This document apparently was filed in the original probate proceedings, but it was not offered in evidence at the trial of the will contest. There does not seem to be any question concerning its validity, but the executors are entitled to a determination as to its status. It can and should be considered upon retrial.

After giving a correct general charge upon all of the numerous issues between the parties, including revocation of the 1974 document either by mutilation or by execution of the later inconsistent will, the trial judge gave the following instruction to the jury at the special request of the contestant:

"Ladies and gentlemen of the jury, I have been requested to charge you and I do that where two holographic wills were presented to probate some significance *must* be attached to the fact that one will was witnessed and signed by two witnesses while the other was not subjected to such formality." (Emphasis added).

▮ The trial judge then further correctly charged the jury that even though one of the documents was actually attested, this did not prevent its being valid as a holograph.

▮ In their motion for a new trial appellants specifically assigned as error the giving of the quoted instructions. This assignment was overruled both by the trial judge and by the Court of Appeals. The Court of Appeals held, correctly, in our opinion, that the witnessing of the 1974 will was admissible as evidence on the issue of testamentary intent and that the absence of that formality on the 1977 will was admissible as evidence on the same issue and on that of mental capacity.

▮ It is highly unusual, however, for a trial judge to tell a jury that they "must" give consideration to any piece of evidence, and it is error for the trial court to single out or give special emphasis to one item of evidence over another.

The Court of Appeals, dealing with this issue, said:

"The appellants next contend that the trial judge should not have instructed the jury that significance *could* be attached to the fact that one of the wills was witnessed and the other was not." (Emphasis added).

As pointed out above, the trial judge did not simply tell the jury that they "could" give some significance to that fact. They were told that they "must" do so.

The Court of Appeals stated that the charge was "consistent with what was stated in *In Re Padgett's Will*, 54 Tenn.App. 1, 387 S.W.2d 355 (1964), in which two holographs were also at issue."

The quoted instruction actually is based upon a statement made in an earlier appellate opinion dealing with wills of Mr. Charles Padgett, *In re Padgett's Will*, 51 Tenn.App. 134, 144, 364 S.W.2d 947, 951–952 (1962).

Mr. Padgett had left two documents, one dated April 10, 1959, and another bearing two dates, the first date being January 15, 1959, on one page and the other being August 31, 1959, on the second page just above the signature of testator. When the two documents were offered for probate, at the first trial the circuit judge directed a verdict in favor of the will bearing two dates, concluding that the date of August 31, 1959 appearing on the signature page made the second will effective as of that date, with the result that the April 1959 will was revoked by operation of law.

It was under those circumstances and in that context that the Court of Appeals, on the first appeal, made the following statement:

"Some significance should also be attached to the fact that the deceased caused the April 10 will, which was entirely in his own handwriting and signed by him, to be witnessed and signed by two witnesses, while the double-dated will was not subjected to this formality." 51 Tenn.App. at 144, 364 S.W.2d at 951–952.

This, of course, was part of the rationale of the Court of Appeals in setting aside a directed verdict and in holding that a jury question was presented as to which of the documents was intended by the testator to be his operative last will and testament. The Court did not state and was not saying in the quoted material that the jury ought to be told that the jurors must give significance to that fact—only that it was a matter of significance to the appellate court in determining whether there was any material and competent evidence from which a jury could find in favor of the will against which a verdict had been directed.

The case was re-tried before a jury, and they found in favor of the "double-dated" will, as the circuit judge had done in the first trial. This decision was affirmed by the Court of Appeals in its second opinion, *In re Padgett's Will,* 54 Tenn.App. 1, 387 S.W.2d 355 (1964). Nothing in that opinion indicates that the trial judge did instruct or should have instructed the jurors as to what significance they should give to this item of evidence as against any other fact or circumstance in the record.

■ As a general proposition, it is well settled:

"It is error for the Trial Judge to single out particular facts and give them undue prominence, or emphasize particular evidence, thus leading the jury to believe that the Court thinks such evidence of greater significance and weight than other evidence not mentioned in the charge." *Stevens v. Moore,* 24 Tenn. App. 61, 76, 139 S.W.2d 710, 720 (1940). *See also Gulf Compress Co. v. Insurance Company of Pennsylvania,* 129 Tenn. 586, 595, 167 S.W. 859, 861 (1914) (recognizing "the rule that the trial judge cannot empha-size special parts of the testimony to the exclusion of the other parts, laying stress now upon this, and now upon that, portion of the evidence."). Nor is every statement in an appellate opinion necessary or appropriate for inclusion in a jury instruction. *State v. Holcomb,* 643 S.W.2d 336, 343 (Tenn.Crim.App.1982).

■ Because the issues in the case were close as to whether the testatrix did or did not regard the 1977 document as her final will and as to whether it was or was not an incomplete instrument, we cannot conscientiously conclude that the ·instruction given by the trial judge was harmless or that it did not affect the result of the trial. It mandated the jury to give some significance to the attestation of the first will and the absence of attestation of the second.

■ As stated previously, the opinions respecting the *Padgett* wills, above referred to, do not stand for the proposition that a trial judge should tell a jury that they "must" give significance to any one particular item of evidence, or even that they "could" do so. The instruction given in this case was reasonably susceptible to an interpretation that the jurors were obligated to regard the absence of witnesses to the second holographic document as very significant, when, in fact, a holographic will does not require witnesses at all. It effectively destroyed the argument advanced by appellants that the testatrix was aware that two persons had to identify her handwriting, if she used a holographic will, and that she wrote down the names of these persons as individuals who had in the past witnessed her previous will and who could easily identify her handwriting. Whether the jurors should or should not accept that argument is one of the very issues to be determined in the trial of the case. The presence or absence of formal attestation to a holographic will is not a matter which the trial judge should tell the jury that they "must" accord "some significance."

■ We are of the opinion that all other issues in this case were properly dealt with by the Court of Appeals. Coun-

sel for appellants, who is also a party to the action, contends that the trial judge should not have charged the jury on the "missing witness" rule with respect to his failure to take the stand at the trial. The Court of Appeals properly pointed out that he is a material witness to some of the events surrounding the discovery of the two documents after an illness of the testatrix. By his actions he placed himself in the position of being a witness, a fact apparent long before trial. He should not be trial counsel in this case. However if he insists upon doing so, he, of course, cannot properly be a witness as to contested issues. He therefore runs the risk that such a charge might be given. The fact that other witnesses corroborated what he might have to say does not preclude the contestant from seeking such an instruction. Further, the charge as given was a general one, applicable to any party who failed to call a witness. Appellants have insisted that the rule is applicable to the failure of appellee to call several persons and that inferences could be drawn against her for that reason. The charge given did not refer specifically to any witness or to either party.

The judgment of the trial court is reversed and the cause is remanded for a new trial as to all issues. All costs accrued to date will be taxed against the estate of the decedent.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.