Sarah HOBBS et al.

v.

Louis M. WILSON et al.

Supreme Court of Tennessee.

Dec. 22, 1980.

Rehearing Denied April 22, 1981.

John S. Wilder, Sr., James S. Wilder, III, Wilder, Wilder & Johnson, Somerville, J. Thomas Lowry, Memphis, for Sarah Hobbs, et al.

Troy W. Tomlin, Somerville, Joel Porter, Burch, Porter & Johnson, Memphis, for Louis Wilson, et al.

OPINION

COOPER, Justice.

This is a contest between the remaindermen under the will of Dr. Louis McAuley and the beneficiaries under the will of Mrs. McAuley over proceeds from the sale of real property by Mrs. McAuley under the power granted her in the will of her husband.

Also at issue is the validity of the conveyance by Mrs. McAuley to her brother, the defendant Frank L. Wilson.

The critical devise by Dr. McAuley is set forth in Codicil # 1 to his will, as follows:

I hereby will and devise unto my said wife, Mrs. Erma Wilson McAuley, all of the remainder of my real estate for life and, having full confidence in her judgment and discretion, I authorize her to use so much of the corpus thereof as she shall find necessary for her comfort and maintenance, she being the sole judge of her needs, ... and at her death, whatever remains undisposed of, if any, I will and devise the same in fee simple to my twelve nieces and nephews as equal tenants in common, ... [the remaindermen then are named].

The real estate referred to in the codicil consisted of approximately 223 acres of farm land. On February 27, 1965, Mrs. McAuley conveyed 111.5 acres to her brother, Frank L. Wilson for $16,750.00, or $150.00 per acre. In payment, Mr. Wilson cancelled a debt in the amount of $2,750.00 owed him by Mrs. McAuley and paid $14,-000.00 in cash. The cash payment was not made until June 4, 1969, the explanation being that the entire 223 acres were under lease expiring in 1969, and Mrs. McAuley drew the rent from the entire tract.

The remaining one-half of the farm was sold by Mrs. McAuley to A. A. McLean in June, 1970, for $44,476.00 or $400.00 per acre. The $58,476.00 in cash received by Mrs. McAuley from the two sales was deposited in accounts payable to Mrs. McAuley or Frank L. Wilson to facilitate Mr. Wilson's handling of the personal and business affairs of his sister. Of the total, $34,000.00 was deposited in a golden passbook savings account at the Oakland Deposit Bank; [1] $2,000.00 from the McLean sale was put in Mrs. McAuley's regular savings account and $2,476.00 in her checking account at the Oakland Deposit Bank; and

$20,000.00 was deposited in a savings account in the First National Bank in Memphis. Routinely, withdrawals were made from the savings accounts at Oakland Deposit Bank and were deposited in Mrs. McAuley's checking account as needed to meet expenses. Other funds received by Mrs. McAuley, such as social security checks, were also deposited in the checking account. Checks totalling $44,659.12 were drawn on Mrs. McAuley's checking account to pay her expenses for the period between June, 1969, when she received the cash payment from Mr. Wilson, and her death on March 19, 1973.[2] At her death, there was a balance in the golden passbook account in the amount of $10,005.02, including interest of $4,205.02; $23,000.00 in the savings account at the First National Bank in Memphis, $3,000.00 of which was interest; and $2,359.12 in Mrs. McAuley's checking account.

The chancellor concluded that Mrs. McAuley had the power to sell the property and to use the proceeds as her support required and, at her death, the balance of the funds from the sales passed to the remaindermen. The chancellor also found that the sale by Mrs. McAuley to her brother was fraudulent and set the sale aside. The effect of the latter action by the chancellor was to give title to the property to the remaindermen under the will of Dr. McAuley.

The Court of Appeals, with one judge dissenting, agreed with the chancellor's construction of the will and its effect. The court also found the conveyance to Frank Wilson to be fraudulent, but did so on a basis different from that voiced by the chancellor. The Court of Appeals also differed from the chancellor on the distribution of funds in possession of Mrs. McAuley at her death. Under the judgment of the Court of Appeals, Mrs. McAuley's estate was allowed to retain funds covering "rea-

---

1. Mrs. McAuley also deposited other funds in this account.

2. These expenses far exceeded the social security payments received monthly by Mrs. McAu-

ley and the interest on monies deposited by her in savings accounts, forcing her to draw on the principal.

sonable living expenses" expended by Mrs. McAuley from her personal funds, and the interest earned from the depositions of the sale proceeds. The remainder of the funds was awarded to the remaindermen. All parties appealed.

Under the common law of this state, a devise of a life estate coupled with an absolute power of disposition created a fee simple estate in the devisee which effectively defeated the rights of a remainderman, whether the power of disposition was exercised or not. *See Ogilvie v. Wright,* 140 Tenn. 114, 203 S.W. 753, 754 (1918). *See also* 17 A.L.R.2d 36. The application of this rule of law often defeated the basic intent of the testator that the remainderman share in that part of the estate not disposed of by the life tenant. *See Weiss v. Broadway National Bank,* 204 Tenn. 563, 322 S.W.2d 427 (1959). To correct this situation, the legislature passed T.C.A. § 64–106, which provides that:

> When the unlimited power of disposition, qualified or unqualified, not accompanied by any trust is given expressly, in any written instrument, to the owner of any particular estate for life or years legal or equitable, such estate is changed into a fee absolute as to right of disposition, and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate.

The effect of this statute is to convert a life estate in real property, coupled with full power to dispose of the property, into "a fee absolute as to the right of disposition," while saving the rights of a remainderman in property when the power of disposition is not executed. *Cf. Weiss v. Broadway National Bank,* 204 Tenn. 563, 322 S.W.2d 427 (1959).

In the codicil under consideration, Mrs. McAuley was given a life estate in the real property owned by her husband at the time of his death. She also was expressly authorized to use any and all of the real property she decided was necessary for her comfort and maintenance, with her being the sole judge of her needs. There was no requirement that she justify a sale of the property or justify the price received for the property, nor was there any requirement that she hold the proceeds of the sales in trust or account for the proceeds. In our opinion, this unlimited power of disposition changed Mrs. McAuley's life estate into a fee simple with power of disposition. It also placed in her the power to terminate the interest of the remaindermen by executing the power of disposition in her lifetime. This she did by selling the real property in two separate conveyances. The validity of one of the conveyances—the one to A. A. McLean and wife—is not challenged in any way by the remaindermen. The challenge to the other—the one to Frank L. Wilson— questions the need for a sale of property at the time it was made, the adequacy of the consideration, and the close relationship between Mrs. McAuley and her brother. These issues were foreclosed to the remaindermen by the devise to Mrs. McAuley of a life estate coupled with full power to dispose of the property in her lifetime. The testator not having placed any limitations on Mrs. McAuley's power to sell, the contingent remaindermen are not in a position to do so.

The remaindermen also argue that a conveyance by a life tenant with power to dispose of property does not cut off their interest but that their interests are merely transferred to the proceeds of the sale. The cases cited by remaindermen relative to this point are inapposite in that they deal with devises of the residue of the testators' properties including real, personal, and mixed, to contingent remaindermen following a life estate. In this case, the remainder interest is only in the real property owned by the testator at his death. If the remaindermen are to take any estate, it must be under the codicil and they must come within the saving provisions of T.C.A. § 64–106. The statute saves the remainder interest "in the event and so far as the power is not executed." It is undisputed

that Mrs. McAuley executed her power of disposition by selling the real property, which terminated the remainder interest.

The judgments of the Court of Appeals and the trial court are reversed, and the cause is dismissed. Costs of the cause are adjudged against Sarah Hobbs, et al., and their surety.

BROCK, C. J., and FONES, HARBISON, and DROWOTA, JJ., concur.

OPINION ON PETITION TO REHEAR

COOPER, Justice.

The petition to rehear filed in behalf of Sarah Hobbs, et al. has been considered and found to be without merit. Accordingly, the petition to rehear is denied. Costs attendant to its filing are adjudged against petitioners.

HARBISON, C. J., and FONES, BROCK, and DROWOTA, JJ., concur.