IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, December 4, 2002

**BEN H. WILSON, WILLIAM C. WILSON, HELEN WILSON WARD, MONTIE WILSON ANDERSON, JOYCE PARVIN DANIELS, and LINDA WILSON BAILEY, v. KATE WILSON WARD, JAMES L. WILSON, BILLY WILSON, SHIRLEY GREGG and JOANNE SWECKER**

**Direct Appeal from the Chancery Court for Greene County**
**No. 97000219      Hon. Thomas R. Frierson, II., Chancellor**

**FILED MARCH 24, 2003**

**No. E2001-02177-COA-R3-CV**

The Trial Court, exercising its equitable powers, ordered property sold and proceeds distributed in accordance with the terms of a Will in an estate closed in 1982. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as Amended.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Sandra Lee Stanbery, Greeneville, Tennessee, for Appellants Kate Wilson Ward, Shirley Gregg and Joanne Swecker.

Roger A. Woolsey, Greeneville, Tennessee, for Appellees.

**OPINION**

This is a dispute between the heirs of W.C. Wilson ("W.C.") and Lura Fillers Wilson ("Lura") as to the ownership of certain real property. The parties are either children of W.C. and Lura or the children of a deceased child. There were nine children born to the marriage, Clarence (died in 1995), Ben, Willy, Helen (died in 2000), survived by children Caroline and Vena. Montie,

Kate, her two daughters, Joann Swecker and Shirley Gregg are defendants; Geneva died in 1996, survived by daughter, Joyce, Lester, whose children are Linda and Jimmy and Clyde, whose child is Billy.

At the time of W.C.'s death in 1977, he owned realty known as the "Home Place" and another 48 acre parcel called the "Russell Place," the latter being owned as tenancy by the entirety with Lura. This latter property is not at issue on this appeal.

W.C.'s Will named sons Ben and Clarence as co-executors of his estate, and his Will stated in pertinent part:

> SECOND: I will and bequeath to my wife Lura Wilson for and during her natural life the remainder of my property of every kind real personal or mixed with the privilege (sic) to sell any and all the personal property needed for her support during her lifetime and to have full control over the real estate so long as she may live.
>
> THIRD: After the death of my wife my executors shall sell my real estate and execute deed or deeds to the purchaser or purchasers and convert any remaining personal property not used by my wife to cash and use as follows. . . .

His Will continues that when the property is sold, the proceeds would be distributed equally among his nine children after payment of debts and administration costs. The executors closed W.C.'s Estate in 1982.

Lura remained in the Home Place until her death in 1984. Clarence resided with her and helped care for her needs, though he also had severe health problems and was a double-amputee. Lura executed her Will in 1977, followed by two codicils in 1980 and 1983. The relevant portion of Lura's Will is stated in Article II:

> In the will of my deceased husband, W.C. "Bill" Wilson, he granted me a life estate in certain real property owned by him, but upon which our home was constructed. In his will, he then directed that upon my death, the remainder of his property should be divided equally among our children.
>
> I recognize that it is beyond my power to effectively devise property in which I only have a life estate. I have, however, been advised of my right to dissent from my husband's will and take a distributive share thereof. I have been further advised of my right to use this property for my lifetime for my benefit, but I choose not to do either of these things out of respect for the memory of my deceased husband.
>
> Nonetheless, it is my wish that my son, Clarence Wilson, should have the homeplace, including the 20 acres of real property, all personal items in the house, all farm machinery and all livestock. I, therefore, respectfully request that all my

children, and all other persons who may have an interest of any kind in this property, join in executing a deed, and such other releases as are necessary, to give this property to my son, Clarence Wilson.

The Will and codicils further direct that if any heir refused to execute a deed to the Home Place in favor of Clarence, then Clarence would receive the entire Russell Place, but if they did cooperate and convey the Home Place to Clarence, then the Russell Place was to be sold and the proceeds equally divided. Some of the siblings challenged Lura's Will on the grounds of incompetence and undue influence. However, a jury found in favor of the Will, and that verdict was affirmed on appeal to this Court in 1986. The Home Place and personalty were never sold as directed by W.C.'s Will.

After Lura's death, five of the siblings and Clarence had a meeting, where it was agreed that Clarence could remain on the Home Place and receive income produced by the farm, in return for maintaining the property and paying the taxes and insurance. Clarence had filed bankruptcy in 1982, from which he never financially recovered. In the bankruptcy proceedings, he claimed that all of the personalty relevant here was owned by his mother. The siblings shared in helping Clarence around the Home Place as well as contributing substantial money for bills and necessities. They had always assisted their mother substantially with both money and labor support until her death, particularly Kate and Geneva.

In 1991, Clarence executed a deed conveying the Home Place and the Russell Place to Defendants Swecker and Gregg, his nieces. The deed purports authority to convey by virtue of Lura's Will. Swecker and Gregg testified they did not know Clarence had executed the deed until he recorded it in 1993 and from 1993 forward, Swecker and Gregg paid the taxes and insurance on the property. They also paid off a lien against it incurred by a collection action against Clarence. No other heir paid taxes on the property after Lura's death and before Clarence's death in 1995, except for 2 years when Kate and Helen each paid one-half.

In 1997, Ben Wilson petitioned the Court to re-open the estate of W.C. Wilson for the purpose of distributing the property as directed in the Will. The petition was denied, the Court finding there had been no new discovery of assets which necessitated that action, and the interests of the parties could be adjudicated without re-opening the estate.

This action was filed on October 13, 1997, ultimately seeking to determine the legal ownership of the Home Place, clear title, and sale by partition, as well as the personal property owned by W.C. at the death of Lura to be identified, sold, and the proceeds divided in accordance with W.C.'s Will. First, the Chancellor granted summary judgment to the defendants, finding the petitioners were not entitled to a partition of the realty or sale, but upon a Petition to Reconsider, held that the Court had equitable jurisdiction to remove any cloud from the title of property because there was no adequate remedy at law, and that it could set aside invalid deeds or make other disposition to afford complete relief to the parties and to avoid a multiplicity of lawsuits. The Chancellor filed a Memorandum Opinion after trial, holding that Clarence did not have a fee simple in the Home Place, but by equitable conversion, Clarence owned only 1/9th interest in the property under W.C.'s Will. The Court directed the Clerk and Master to sell at public auction the Home Place, and any

remaining identifiable personalty of W.C. Wilson and distribute the balance of the proceeds in 1/9th shares to the children of W.C. and Lura Wilson, *per stirpes*, after payment of costs and expenses. Defendants Gregg and Swecker were awarded one-half each of Clarence's distributive share of the net sale proceeds, or 1/18th each.[1]  Because they had received the income from the property after Clarence's death in an approximately equal amount  to the taxes and insurance they had paid since 1993, the Court held that Swecker and Gregg were not entitled to additional reimbursement from the net proceeds.

The issue raised by appellants essentially is whether the Trial Court in the exercise of its equitable jurisdiction erred in characterizing and resolving the dispute among the heirs as a cloud upon the title to the property and appellants charged plaintiffs with coming into Court with unclean hands.[2]

Questions of law are reviewed *de novo* with no presumption of correctness.  *Union Carbide Corp. V. Huddleston,* 865 S.W.2d 87, 91 (Tenn. 1993); *Wells v. Tenn. Bd. Of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999).  The Trial Court's findings of fact enjoy a presumption of correctness and will be affirmed unless the evidence preponderates otherwise.  *Cross v. City of Memphis,* 20 S.W.3d 642 (Tenn. 2000).

The Chancellor's opinion frames two issues that are matters of law: the validity of the deed, and whether plaintiffs may assert a claim for the personalty of the decedent.

The Trial Court has jurisdiction to determine the validity of deeds and to remove clouds upon titles.  *Stearns Coal and Lbr. Co., v. Patton,* 184 S.W. 855 (Tenn. 1916).  An invalid deed granted to heirs creates a cloud upon the title to the land, and a court of equity has jurisdiction to cancel or void the deed upon equitable grounds.  *Id.*  A court of equity will regard that "as done which ought to be done". . . and "grant relief where the right of relief or procedure in law is inadequate." *American Mill Co., v. Cairo Oil Mill Co.,* 10 Tenn. Ct. App. 450 (1929).  Moreover, when a Chancery Court takes jurisdiction for one purpose it may exercise jurisdiction for all purposes incidental to the jurisdiction of the main subject, to prevent a multiplicity of  actions.  *Martin v. Martin,* 755 S.W.2d 793, 797 (Tenn. Ct. App. 1988).  A principal issue is the nature and extent of the estate held by Lura and what property she could devise under her Will.

Where a life estate is bequeathed with an unlimited power of disposition expressly

---

[1]The Judgment as entered, states that Gregg and Swecker were awarded 1/9th shares each. The same error of a 1/9th fraction occurs with the shares of Linda Wilson Bailey and James L. Bailey, children of Lester Wilson, deceased.  The Court's intent is clear in the Memorandum Opinion and the fractions are obviously clerical errors and will be corrected upon remand.

[2]We find no answer in the record raising affirmative defenses.  However, unclean hands may be raised at any stage of the litigation.

given in the instrument, the fee is absolute with the power of disposition during the beneficiary's lifetime, but any remaining property will be subject to the remainderman's interest. *Hobbs v. Wilson,* 614 S.W.2d 328, 330 (Tenn. 1981); *Ogle v. Ogle,* 880 S.W.2d 668 (Tenn. 1994); *Tenn. Code Ann. § 66-1-106. Also see, Redman v. Evans*, 184 Tenn. 404 (1947).

If the power of disposition is restricted, limited or contingent the life estate is not converted into fee simple ownership. *See Mark v. Irwin*, 136 S.W.2d 922 (Tenn. 1940).

The cardinal rule for construction of wills is to ascertain and give effect to the testator's intent. *In re Walker,* 849 S.W.2d 766, 768 (Tenn. 1993). W.C.'s Will is clear that Lura had the power to sell personal property for her own support, and what was left over at her demise passed to the remaindermen. *See Ogle* and *Tenn. Code Ann. § 66-1-106*. The Will then delineates out the realty "for so long as she may live" and then directs the gift over. Lura received a life estate in the Home Place by virtue of W.C.'s Will, and indeed the parties do not dispute this.

Lura did not attempt to convey the property in fee, as her Will correctly acknowledges. *See, McKnight v. McKnight,* 115 S.W. 134, 136 (Tenn. 1908). She did express her wishes and desires, and set forth conditions she hoped would be accepted by her children. While appellants do not dispute that Lura held only a life estate, they insist that the litigation over her Will concluded in 1986 somehow has converted her life estate into a fee simple interest. No authority has been shown for this proposition. The conclusion misconstrues the outcome of that lawsuit. Examination of the Judgment entered reveals that the verdict merely held that the Will was valid. The jury found and this Court affirmed that Lura was competent to make the Will and that she was not subject to undue influence.

Gregg and Swecker claim title by virtue of Clarence's deed. Clarence was to receive a child's share or 1/9th equitable interest per the terms of W.C.'s Will. Accordingly, he could only convey his 1/9th total to Swecker and Gregg. The remaining portions of the deed are void. "A deed which purports to convey a greater estate than the grantor has will be void only as to the excess and will be construed as a conveyance of that which it was in his power to convey." *Sloan v. Sloan,* 184 S.W.2d 391, 392 (Tenn. 1945). The Trial Court correctly awarded Clarence's share to these nieces. While not raised as an affirmative defense, appellants insist that because appellees remained silent and took no action to assert their claims, since Lura's Estate had been concluded they should now be estopped from asserting a claim. This argument does not recognize a key element of a successful estoppel, i.e., the party relying upon the defense must show prejudice or harm caused by the delay. *Lane v. Associated Housing Developers,* 767 S.W.2d 640, 647 (Tenn. Ct. App. 1988). Nor have defendants established plaintiffs have unclean hands.

Defendants have not shown how they suffered any detriment by the plaintiffs' delay. There was testimony that defendants did nothing extra to the property in terms of improving it or spending money on it, except for maintenance.

The taxes and insurance they paid were approximately equal to the income generated by the property, and thus they suffered no monetary loss.

The Trial Court, in its Supplemental Opinion, concluded that the statute of limitations was not applicable to the Court's jurisdiction to remove a cloud upon the title. Appellants conceded that there was no issue of adverse possession and *Tenn. Code Ann. § 28-3-110* is inapplicable because it deals with the liability of executors and administrators, not to actions to quiet title. *See Stearns Coal and Lbr. Co., v. Patton,* 184 S.W. 855, 859-860 (Tenn. 1916). Assuming *arguendo* the statute of limitations would apply, it appears that the siblings participated in various degrees in tending Clarence before his death, helping maintain the Home Place, and there is no claim of adverse possession by Clarence. It was only when plaintiffs learned of the deed from Clarence to Swecker and Gregg upon recordation in 1993, that they knew with certainty that defendants were claiming the entire estate. This action challenging the deed was brought well within the statutes of limitations.

For all the foregoing reasons, we affirm the Judgment of the Trial Court, which will be modified to correct clerical errors in the Judgment as mentioned previously.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed jointly to the defendants.

_____
HERSCHEL PICKENS FRANKS, J.