IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 2, 2004 Session

## VALERIE J. HARGIS, ET AL. v. FREDALENE FULLER, Individually and as Executrix of the Estate of Barney Loyd Fuller, Jr.

Direct Appeal from the Probate Court for Humphreys County
No. P-1154-99     Anthony L. Sanders, Judge

No. M2003-02691-COA-R3-CV - Filed February 7, 2005

This appeal involves the construction of a will. The decedent died owning farmland in excess of twenty acres in size. Wife admitted the decedent's properly executed will, which named her as executrix, into probate. The decedent's children by a prior marriage filed an action in the probate court asking the probate court to construe conflicting provisions in the decedent's will. One section of the decedent's will purported to devise to his children the entire farm subject to the wife's life estate, while the second provision purported to devise to the wife a life estate in the "homeplace." The decedent's children argued the term "homeplace" encompassed something significantly less than the entire farm. The probate court disagreed, interpreting the term "homeplace," as used by the decedent, to mean the entire farm. In addition, the probate court ruled that, pursuant to section 66-1-106 of the Tennessee Code, the decedent's will created in his wife an unlimited power of disposition as to the farm. The decedent's children have appealed the interpretation of the decedent's will reached by the probate court to this Court. We affirm the decision of the probate court in all respects.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

James Robin McKinney, Jr., Nashville, TN, for Appellants

John Lee Williams, Waverly, TN, for Appellee

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case presents issues related to the construction of a will. Fredalene Patterson Fuller("Wife") and Barney Loyd Fuller, Jr. ("Decedent") married in 1975. While Wife and Decedent did not have children together, both had children from their prior marriages. Decedent died on September 8, 1999, and Wife filed a petition to probate Decedent's duly executed formal will in the Probate Court of Humphreys County, Tennessee. Decedent's attorney, Charles Griffith ("Mr. Griffith"), drafted Decedent's will which he executed on October 26, 1990, naming Wife as his executrix. On September 16, 1999, the probate court entered an Order for Probate recognizing Wife as the duly appointed executrix.

On January 18, 2000, Valerie J. Hargis ("Ms. Hargis"), Cathy L. Morgan, and Abbie L. Triplett (collectively referred to as "Decedent's Children") filed a Complaint to Construe Will in the probate court. Specifically, Decedent's Children asked the probate court to construe the following provisions in Decedent's will:

### ARTICLE II

I hereby will, devise and bequeath as follows:
. . . .
B.) To my children, Mark Ellrie Fuller,[1] Cathy Lynn Fuller, Valerie Joan Fuller and Abbie Lou Fuller (*subject to the life estate of my wife*) *the 35 acre farm* at Hustburg, Tennessee. [sic] in equal acreage, per stirpes and not per capita, as shown by sketch on page 3 of this my Will, but any cost of survey or division to [sic] borne by them.
C.) To my wife, Fredalene Fuller, *my homeplace for the remainder of her natural life with full powers to consume if necessary for her health care, maintenance or necessary living expenses*, the Highway 70 property and all the rest, remainder and residue of my estate, whether real, personal or mixed, and wheresoever situated.

At the time of his death, Decedent died seized of a tract of land (hereinafter referred to as "the Farm") which he acquired from his mother by warranty deed in 1982.[2] Decedent was raised on the

---

[1] Mark Fuller predeceased Decedent on November 8, 1994, unmarried and without issue. Decedent had a fifth child by his previous marriage, Amy Beth Fuller, who predeceased Decedent on September 12, 1987, and prior to the execution of his will.

[2] The parties entered an exhibit pre-trial entitled "Stipulation," in which they purport to agree that Decedent died seized of the Farm which constituted thirty-five (35) acres. However, the parties also stipulated that in March 1991,
(continued...)

particular parcel of land in question from an early age. In addition to the above provision, Decedent attached a tax map to his will on which he divided the subject property into four sections and labeled each section with one of the names of Decedent's Children.[3]

Located on the Farm is an old abandoned house previously occupied by Decedent's mother and father, who are deceased.[4] Around the time they married in 1975, Decedent and Wife had placed on the Farm a trailer which they used as their residence. When Decedent executed his will in 1990, he and Wife were living in the trailer located on the Farm. Decedent and Wife planted crops on the farm, and, at some point, they installed a pavilion on the Farm next to a creek which ran through the property. Later, Decedent and Wife enclosed the pavilion and converted it into a restaurant which they operated on the Farm. According to Wife, she and Decedent borrowed $61,000.00 in January 1989 to convert the pavilion into a restaurant using the Farm as collateral.[5] When Decedent and Wife purchased another restaurant on Highway 70 in Humphreys County, they converted the restaurant on the Farm into a home (hereinafter referred to as the "Restaurant House"). Apparently, Decedent and Wife planned to renovate the trailer while they were temporarily residing in the Restaurant House. However, a storm subsequently blew a tree onto the trailer, making it uninhabitable. At the time of his death in 1999, Decedent and Wife were living in the Restaurant House.

At a hearing conducted on July 21, 2003, the probate court heard testimony from Wife, Ms. Hargis, Charles Griffith ("Mr. Griffith"),[6] and Valerie Fuller. Mr. Griffith, Decedent's attorney and scrivener of the will, testified that he and Decedent discussed making a will for several years. Mr. Griffith drew up several drafts, but Decedent would review them and subsequently reject them because he felt they did not convey his desires. Decedent finally signed off on the version presently at issue, but Mr. Griffith could not say that Decedent intended the term "35 acre farm" and "homeplace" to be synonymous.

---

[2](...continued)
Decedent and Wife conveyed eight and three-quarter (8 3/4) acres to Mark Fuller out of the larger tract. Following Mark Fuller's death in 1994, his biological mother and Decedent apparently each obtained a one-half interest in the parcel previously conveyed to Mark Fuller by intestate succession. On April 6, 1999, his biological mother executed a quitclaim deed purporting to convey to her daughters, Decedent's Children, and her granddaughter, her undivided one-half (½) interest in the property. Accordingly, it is apparent to this Court that Decedent did not die seized of the entire thirty-five (35) acre tract as stipulated to by the parties.

[3] The tax map contained lines designating four boxes within the larger tract of land. Each box contained one of the following names: Valerie, Cathy, Abbie, and Mark.

[4] Pursuant to the 1982 warranty deed, Decedent's mother reserved for herself a life estate in the old house and two acres surrounding it. At her death, the property once again became vested in Decedent.

[5] Ms. Hargis testified that Decedent and Wife were operating the restaurant for three years prior to the execution of the loan in January 1989. She stated Decedent and Wife used the loan proceeds to buy the restaurant located on Highway 70. In any event, this loan was not paid off at the time of Decedent's death, and Wife paid off the loan subsequent to Decedent's death.

[6] Mr. Griffith did not represent Wife or the estate of Decedent at trial.

Wife testified that she and Decedent had numerous conversations during which he expressed his intentions regarding the Farm following his death. Wife offered testimony to the effect that, by using the term "homeplace," Decedent meant the entire Farm. She stated that, being aware of her health problems and lack of adequate health insurance, Decedent intended for her to have a life estate in the entire Farm with the power to dispose of it, if necessary, for her maintenance. Conversely, Ms. Hargis was apparently present for some of these conversations, and she recalled Decedent expressing an entirely different desire regarding the Farm. Ms. Hargis testified that Decedent intended "homeplace" to mean the location where Wife was living at his death, the Restaurant House, and a couple of acres surrounding it. Ms. Hargis stated Decedent intended Decedent's Children to take the remainder of the Farm, as demonstrated on the tax map attached to his will.

The probate court entered a final decree on August 7, 2003, construing Decedent's will, in relevant part, as follows:

> 9. Barney Loyd Fuller, Jr. intended to devise a life estate in the Farm to Defendant with the remainder in fee simple to Plaintiffs and their brother, Mark Ellery Fuller, by Article II at subparagraphs B and C of the Will. By the term "homeplace" referred to in subparagraph C he [sic] the said Barney Loyd Fuller, Jr. meant the whole of the Farm which he identified as the "35 acre farm at Hustburg, Tennessee." By his devise he conferred on Defendant power to consume the Farm as necessary for her health care, maintenance needs or necessary living expenses. Therefore, by virtue of Section 66-1-106, Tennessee Code Annotated, Defendant was given an unlimited power of disposition and sale thereof during her lifetime without necessity of joinder of the remaindermen.
> . . . .
> 1. By virtue of the devise made in the Will the Defendant is possessed of and vested with an estate in fee simple absolute in and to the Farm with right to sell and dispose of the same without joinder of Plaintiffs. Likewise, such estate exists in her to the extent that during her lifetime her creditors subject the same to the satisfaction of her unpaid debts.
> . . . .
> 3. To the extent a sale or disposition of the Farm, or some part thereof, does not occur by the time of the death of Defendant or to the extent proceeds from any such sale or disposition are not used for the satisfaction of the debts of Defendant during her lifetime or are not otherwise consumed for her necessary health care, maintenance needs and necessary living expenses, the same shall be in trust for Plaintiffs in accordance with their remainder interests as devised under the Will. . . .

Decedent's Children filed a Motion to Alter or Amend the probate court's judgment, which the probate court subsequently denied. Decedent's Children then proceeded to file an appeal to this Court presenting the following issues for our review:

I.    Whether the probate court properly construed Decedent's will by interpreting the term "homeplace" to mean the entire Farm; and

II.   Whether Decedent's will created in Wife an unlimited power of disposition which converted the subject real estate into a fee simple absolute pursuant to section 66-1-106 of the Tennessee Code.

For the reasons set forth herein, we affirm the decision of the probate court.

## II.
### STANDARD OF REVIEW

While will contests involve factual questions to be resolved by a trier of fact, will constructions involve questions of law left for resolution by the court. *In re Estate of Eden*, 99 S.W.3d 82, 87 (Tenn. Ct. App. 1995). Accordingly, a probate court's construction of a will includes conclusions of law which we review *de novo* with no presumption of correctness. *Briggs v. Estate of Briggs*, 950 S.W.2d 710, 712 (Tenn. Ct. App. 1997) (citing *Presley v. Hanks*, 782 S.W.2d 482, 487 (Tenn. Ct. App. 1989)).

"Construction suits recognize the testator's right to direct the disposition of his or her property and thus, limit a court to ascertaining and enforcing the testator's directions. *In re Estate of Eden*, 99 S.W.3d at 87 (citing *Daugherty v. Daugherty*, 784 S.W.2d 650, 653 (Tenn. 1990)). "The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy." *Briggs*, 950 S.W.2d at 712 (citing *Third Nat'l Bank in Nashville v. First Am. Nat'l Bank of Nashville*, 596 S.W.2d 824, 828 (Tenn. 1980)); *see also In re Will of Padgett*, 364 S.W.2d 947, 951 (Tenn. Ct. App. 1962). "The testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in light of the surrounding and attending circumstances." *Presley*, 782 S.W.2d at 487 (citing *Moore v. Neely*, 370 S.W.2d 537, 540 (Tenn. 1963); *Fisher v. Malmo*, 650 S.W.2d 43 (Tenn. Ct. App. 1983)); *see also Mongle v. Summers*, 592 S.W.2d 594, 596 (Tenn. Ct. App. 1979). We are not permitted to undertake an examination of what a testator is supposed to have intended. *Presley*, 782 S.W.2d at 488; *see also Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992); *Briggs*, 950 S.W.2d at 712. Recognizing that a testator has an absolute right to have his property disposed of according to his direction, *Daugherty*, 784 S.W.2d at 653, we must attempt to construe a will so that every word and clause contained therein is given effect. *Briggs*, 950 S.W.2d at 712.

## III.
### LAW AND ANALYSIS

### A.
### *Estate conveyed to Wife*

Decedent's Children do not contest that Decedent, through his will, devised to Wife a life estate in some portion of the Farm. Instead, Decedent's Children assert that the term "homeplace," as used in Decedent's will, should be construed to mean the approximately one acre of land designated on the tax map in the northernmost portion of the Farm. Although the tax map does not set forth what the smaller box contained within the larger tract is to represent, according to the Decedent's Children, this would encompass the "old home place, the pavilion and the area where the original trailer was located." In turn, Decedent's Children would divide, in equal shares, the remainder of the Farm. Although not stated in their brief, it appears Decedent's Children, in support of this construction, are relying on Ms. Hargis' testimony in the proceeding below regarding statements made to her by Decedent concerning his wishes regarding the Farm.

At the outset of the hearing before the probate court, counsel for Decedent's Children called Ms. Hargis to testify about statements made by Decedent to Ms. Hargis concerning his wishes regarding the Farm. Counsel for Wife objected on the basis that, while "homeplace" could be considered a latent ambiguity explainable by parol evidence, the Dead Man's statute prevented Decedent's Children from testifying as to what the term "homeplace" meant in Decedent's will. The probate court agreed, sustaining the objection on the basis of the Dead Man's statute and finding that the term "homeplace," as used in Decedent's will, constituted a latent ambiguity capable of explanation by parol evidence. Counsel for Decedent's Children then excused Ms. Hargis and called Wife to the stand. Wife testified that Decedent intended each of Decedent's Children to have a part of the Farm, but he also wanted Wife to have a life estate in the Farm. Wife stated that Decedent referred to the entire Farm as the "homeplace" because that was where he lived since he was a little boy. Wife also stated that she believes Decedent's Children were present when these discussions with Decedent took place, and everyone agreed that the entire Farm would be subject to Wife's life estate when Decedent died.

In turn, counsel for Decedent's Children recalled Ms. Hargis to the stand and asked if Decedent ever stated his intentions regarding the way he wanted the Farm divided upon his death. Counsel for Wife renewed his prior objection on the basis of the Dead Man's statute. However, the probate court allowed the testimony for impeachment purposes. Ms. Hargis testified that Decedent's use of the term "homeplace" meant Wife would have a life estate in the restaurant house and a couple of acres, and Decedent's Children would get the remainder of the Farm as designated on the tax map. Counsel for Wife did not cross examine Ms. Hargis citing his fear that he would waive his objection to her testimony on the basis of the Dead Man's statute.

"Ordinarily, parol evidence is inadmissible to add to, vary, or contradict the language used in a will." *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941); *see also Stickley v.*

*Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992); *Green v. Lanier*, 456 S.W.2d 345, 494 (Tenn. Ct. App. 1970). "Any other rule would place it practically within the power of others to make a new will for the testator, so as to meet the convenience and wishes of those who might claim to take under it." 2 Jack W. Robinson, Sr., & Jeff Mobley, *Pritchard on the Law of Wills and Administration of Estates Embracing the Law and Practice in Tennessee* § 418, at 621–22 (5th ed. 1994); *see also Teague v. Sowder*, 114 S.W. 484, 488–89 (Tenn. 1908) ("This rule does not rest upon their immateriality or want of probative value, but upon the impolicy and danger of using such declarations or statements."). It has been well established by our case law that, when construing a will, parol evidence may only be introduced to explain a latent, not a patent, ambiguity in the will. *Holmes v. Roddy*, 144 S.W.2d 788, 789 (Tenn. 1940).

However, the rule that parol evidence may only be used to explain a latent ambiguity will not forbid a court of this state from referring to facts existing when the testator executed the will. *Gannaway v. Tarpley*, 41 Tenn. (1 Coldwell) 571, 574 (Tenn. 1860). A court is not precluded from hearing parol testimony "both to place the Court in a knowledge of the condition and circumstances surrounding the testator when he executed his will, and to resolve uncertainties or ambiguities in the will as to the testator's intentions." *Treanor*, 152 S.W.2d at 1041 (citations omitted); *see also Green*, 456 S.W.2d at 495–96. For instance, the court may entertain parol testimony "as shows the state of facts under which the wills were made, the situation of the properties of the testators, the members of their families and other relevant or cognate facts." *Cannon v. Ewin*, 77 S.W.2d 990, 992 (Tenn. Ct. App. 1934). "Thus facts may be proved to show the state of the testator's property, or such facts as were known to him that may have influenced the disposition of his property in a particular way." *Gannaway*, 571 Tenn. (1 Coldwell) at 574.

The relevant testimony proffered in the instant case went to show what Decedent intended when he used the word "homeplace" in his will. "[D]eclarations of a testator are inadmissible to aid in the construction of his will, except in explanation of latent ambiguities." *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941); *see also Teague v. Sowder*, 114 S.W. 484, 488–89 (Tenn. 1908); *Green v. Lanier*, 456 S.W.2d 345, 351 (Tenn. Ct. App. 1970). Thus, we must begin by determining whether the will presents any ambiguity and, if so, whether that ambiguity is patent or latent. Upon examining Decedent's will, we agree with the trial court's conclusion that an ambiguity exists. Decedent first provides that Decedent's Children are to have his "35 acre farm" subject to Wife's life estate. Next, Decedent provides that Wife's life estate shall consist of "my homeplace." Decedent's will does not further define the parameters of the "homeplace."

Our supreme court has provided that a latent ambiguity exists:

> [W]here the equivocality of expression, or obscurity of intention *does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer*, and which is susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language,

or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words or phrases made use of.

*Weatherhead v. Sewell*, 28 Tenn. (9 Hum.) 272, 295 (Tenn. 1848) (emphasis added); *see also Teague*, 114 S.W. at 488. In *Weatherhead*, our supreme court went on to explain those instances when a latent ambiguity will be found to exist, providing:

> The instances most frequently chosen as examples of a latent ambiguity are in relation to the person and the thing: as if there be a devise to a person of the same name, with another without any specification appearing upon the face of the will to designate the real object of the testator's bounty, — this is a latent ambiguity as to the person. If a testator devise his manor of S. to A.B., and has two manors, North S. and South S. this is a latent ambiguity as to the thing. As these ambiguities are generated by facts, so they may be removed by a further investigation of facts or matter extrinsic. . . .

*Weatherhead*, 28 Tenn. (9 Hum.) at 296; *see also In re Estate of Burchfiel*, 933 S.W.2d 481, 483 (Tenn. Ct. App. 1996). A latent ambiguity is generally found to exist where the words of a written instrument are plain and intelligible, yet have capability of multiple meanings given extraneous facts. *See* 96 C.J.S. *Wills* § 893 (2001).

In turn, a patent ambiguity will be found to exist when the ambiguity is:

> [P]roduced by the *uncertainty*, *contradictoriness*, or *deficiency of the language of an instrument*, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense without adding ideas which the actual words will not themselves sustain.
> . . . .
> But if these ambiguities *occur in the wording of the will*, producing a palpable uncertainty upon its face, extrinsic evidence cannot remove the difficulty, without putting new words into the mouth of the testator; which in effect would be to make a will for him.

*Weatherhead*, 28 Tenn. (9 Hum.) at 295–96 (emphasis added). A patent ambiguity grows out of the inability, based on the language selected by the testator, in identifying the person or subject matter mentioned therein. *In re Estate of Burchfiel*, 933 S.W.2d at 483; *see also Reid's Lessee v. Buford*, 1 Tenn. (1 Overt.) 413 (Tenn. 1809); *Mauk v. Perry*, No. E2001-00485-COA-R3-CV, 2001 Tenn. App. LEXIS 787, at *9 (Tenn. Ct. App. Oct. 22, 2001); 96 C.J.S. *Wills* § 893 (2001).

We agree with the probate court's conclusion that Decedent's use of the term "homeplace" in his will created a latent ambiguity. *See Achelis v. Musgrove*, 101 So. 670, 672 (Ala. 1924) (construing the term "home place" by relying on the testimony of the scrivener as to what the testator

intended the term "home place" to encompass); *Ratliff v. Yost*, 92 S.W.2d 95, 99 (Ky. Ct. App. 1936) (noting that, had testator's will merely stated "home place," resort could be made to extrinsic evidence concerning testator's intent and meaning in using such phrase); *McDaniel v. King*, 90 N.C. 597, 603 (N.C. Ct. App. 1884) (recognizing the ability to utilize extrinsic evidence to prove what the testator meant by the term "home plantation"). As such, it was proper for the probate court to entertain parol evidence regarding the meaning assigned by Decedent to the term "homeplace." *See Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941).

After reviewing the record, we agree with the probate court's conclusion that, by using the term "homeplace" in his will, Husband intended to devise to Wife a life estate in the entire Farm. In reaching this conclusion, the probate court relied on Wife's testimony that, by using the term "homeplace" in his will, Decedent meant the entire Farm.[7] "When . . . the testator's intent is determined by extrinsic evidence, the trial court's findings of fact regarding that evidence are reviewed *de novo*, with a presumption of correctness." *In re Estate of Garrett*, No. M1999-01282-COA-R3-CV, 2001 Tenn. App. LEXIS 764, at *15 (Tenn. Ct. App. Oct. 15, 2001) (citations omitted). This necessitates the trial court making determinations regarding witness credibility, and we give great deference to the trial court's conclusions in that regard when reviewing a case on appeal. *See Hutchinson v. Neuman*, No. W2001-02886-COA-R3-CV, 2003 Tenn. App. LEXIS 396, at *12 (Tenn. Ct. App. May 27, 2003).

When construing the language used in a will, the courts of this state must consider the will as a whole. *In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003) (quoting *Podesta v. Podesta*, 189 S.W.2d 413, 415 (Tenn. Ct. App. 1945)). The meaning of the term "homeplace" testified to by Wife comports with the immediately preceding section of the will, where Decedent conveys the Farm "subject to the life estate of my wife." In addition, regardless of any latent or patent ambiguities, we may consider those extrinsic facts which place the Court in a state of knowledge concerning the circumstances and conditions surrounding the execution of Decedent's will. *Treanor v. Treanor*, 152 S.W.2d 1038, 1041 (Tenn. Ct. App. 1941). Wife testified that she and Decedent only had the one parcel of land, which they farmed together and borrowed money against to put toward their restaurant business. They lived on the Farm continuously from the time they were married in 1975 until Decedent's death in 1999. Decedent bought the Farm from his mother, and Decedent's parents raised him on the Farm from an early age. Wife stated that Decedent knew she lacked sufficient health insurance. Interestingly, while the tax map does divide the property into separate sections bearing the names of Decedent's Children, the map does not designate a specific portion of the larger tract as the "homeplace." Based on these collective facts, we find that Decedent intended, by use of the word "homeplace," to convey a life estate to Wife in the entire Farm at his death.

---

[7] We need not discuss whether the probate court correctly applied the Dead Man's statute, codified at section 24-1-203 of the Tennessee Code, to exclude the testimony of Ms. Hargis. Decedent's Children have not raised this evidentiary issue on appeal. *See* Tenn. R. App. P. 13(b) (2003) ("Review generally will extend only to those issues presented for review."). However, we note that when Wife offered the testimony regarding what Decedent meant by the term "homplace," she had been called to testify by counsel for Decedent's Children. *See* Tenn. Code Ann. § 24-1-203 (2003) (stating that a party is allowed to testify when called by the opposing party).

### B.
### *Unlimited power of disposition*

Having established that Wife obtained a life estate in the entire Farm under the terms of Decedent's will, we now turn to the second issue raised by Decedent's Children on appeal. Decedent's will provided, in relevant part, as follows:

> To my wife . . . my homeplace for the remainder of her natural life with full powers to consume if necessary for her health care, maintenance needs or necessary living expenses, the Highway 70 property and all the rest, remainder and residue of my estate, whether real, personal or mixed, and wheresoever situated.

First, Decedent's Children contend the language used in Decedent's will does not create an unlimited power of disposition under section 66-1-106 of the Tennessee Code. They point to the language used in the will, "for her health care, maintenance needs or necessary living expenses," to argue that Decedent "qualified" Wife's use of the property, limiting it to only these uses. Therefore, Decedent's Children argue this language creates "a resulting or contributing trust in the property." Alternatively, Decedent's Children contend that Wife cannot rely on section 66-1-106 of the Tennessee Code because she failed cite to the statute in her pleadings in accordance with Rule 8.05 of the Tennessee Rules of Civil Procedure.

Section 66-1-106 of the Tennessee Code provides:

> When the unlimited power of disposition, qualified or unqualified, not accompanied by any trust, is given expressly, in any written instrument, to the owner of any particular estate for life or years, legal or equitable, such estate is changed into a fee simple absolute as to right of disposition, and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in the event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate; provided, that any proceeds from the sale of such estate, not needed for the satisfaction of the debts of such owner during the continuance of the particular estate, shall be held in trust by such owner for the beneficiaries of the remainder interest and the purposes stated in such written instrument.

Tenn. Code Ann. § 66-1-106 (2003). "Under the common law of this state, a devise of a life estate coupled with an absolute power of disposition created a fee simple estate in the devisee which

effectively defeated the rights of a remainderman, whether the power of disposition was exercised or not." *Hobbs v. Wilson*, 614 S.W.2d 328, 330 (Tenn. 1980) (citing *Ogilvie v. Wright*, 203 S.W. 753, 754 (Tenn. 1918)). With the passage of section 66-1-106 of the Tennessee Code, the legislature effectively abrogated the common law rule. *Redman v. Evans*, 199 S.W.2d 115, 116 (Tenn. 1947); *Fell v. Rambo*, 36 S.W.3d 837, 843–44 (Tenn. Ct. App. 2000). As our supreme court has stated:

> Pursuant to the statute, the owner of a life estate with an unlimited power of disposition can convey the fee simple estate, and, thus, defeat the interest of remaindermen. *Hall v. Hall*, 604 S.W.2d 851, 855 (Tenn. 1980); *Hobbs v. Wilson*, 614 S.W.2d 328, 330 (Tenn. 1980). If the power of disposition is not exercised by the life tenant and if the property is not sold for debts during the continuance of the life estate, the property will pass to the remainder beneficiaries upon the death of the life tenant. *Redman v. Evans*, 184 Tenn. 404, 199 S.W.2d 115, 116–17 (Tenn. 1947).

*Ogle v. Ogle*, 880 S.W.2d 668, 669 (Tenn. 1994).

Relying on this statute, the probate court held that the language used in Decedent's will created an unlimited power of disposition in Wife. Our review of the case law interpreting similar language used by testators causes us to conclude that Decedent's will created in Wife a life estate with an unlimited power of disposition. Our supreme court has instructed that use of the phrase "the remainder, if any" in a will is not sufficient to create an unlimited power of disposition because the statute requires that such unlimited power of disposition be "expressly given." *Ogle*, 880 S.W.2d at 670. However, our case law demonstrates that the following language is sufficient to denote the creation of an unlimited power of disposition: "to do with at pleasure," "to do with at discretion," or "to use and enjoy at pleasure," *Miller v. Gratz*, 3 Tenn. App. 498, 507 (Tenn. Ct. App. 1926); "The residue of my estate . . . to handle as he see fit during his lifetime," *Redman v. Evans*, 199 S.W.2d 115, 117–19 (Tenn. 1947); "to my wife . . . all my property including personal property and real estate to do with as she sees fit during her life," *Jones v. Jones*, 462 S.W.2d 872, 874 (Tenn. 1971); "to my wife . . . to have and to hold for and during the full term of her natural life, with right to use and employ, all of said property . . . for her use and benefit . . . and upon her death, such of said property as may remain, shall go to . . . my brother," *Skovron v. Third National Bank in Nashville*, 509 S.W.2d 497, 507 (Tenn. Ct. App. 1973); "unto my said wife . . . all of the remainder of my real estate for life and, having full confidence in her judgment and discretion, I authorize her to use so much of the corpus thereof as she shall find necessary for her comfort and maintenance, she being the sole judge of her need," *Hobbs v. Wilson*, 614 S.W.2d 328, 330 (Tenn. 1980); and finally, "to sell, mortgage, use or consume such property, for her needs in her sole and absolute discretion," *Fell v. Rambo*, 36 S.W.3d 837, 845 (Tenn. Ct. App. 2000).

The language utilized in Decedent's will, while not identical to the language used in any of the aforementioned cases, is sufficient to signify expressly Decedent's intention to create in Wife an unlimited power of disposition, pursuant to section 66-1-106 of the Tennessee Code. The fact

that Decedent's will references "health care, maintenance needs or necessary living expenses" does not change this result. *See Hobbs*, 614 S.W.2d at 330 ("There was no requirement that she justify a sale of the property or justify the price received for the property, nor was there any requirement that she hold the proceeds of the sales in trust or account for the proceeds."). As long as he expressly states an intention to create an unlimited power of disposition, *see Ogle*, 880 S.W.2d at 670, the statute provides that such power may be "qualified or unqualified." Tenn Code Ann. § 66-1-106 (2003). Accordingly, we affirm the probate court's decision in this regard.

In her answer to the Complaint to Construe Will filed by Decedent's Children, Wife does not specifically reference section 66-1-106 of the Tennessee Code. Instead, her answer provides, in relevant part, as follows:

> By Subparagraph C the scope of that life estate as so devised to her is further defined as being for her life in the whole farm coupled with an unlimited power in her to dispose of the same unaccompanied by any trust. Therefore, by operation of law her life estate in the whole thereof, is converted into an estate of fee simple to the extent she exercises her right of disposition during her lifetime and the purchasers thereof from her will obtain a fee simple absolute title therein to the exclusion of Plaintiffs. Such is the proper construction of the devise of such lands. She thus claims the unlimited right of disposition in fee simple of the whole tract of land of the 35 acre "homeplace" owned by testator at the time of his death. She asserts her right to consume the entirety of the proceeds therefrom by virtue of the devise.

Decedent's Children argue that this statement fails to comply with Rule 8.05 of the Tennessee Rules of Civil Procedure, which provides:

> Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. . . .

Tenn. R. Civ. P. 8.05 (2003). Specifically, Decedent's Children contend Wife's answer failed to put them on notice of her reliance on the statute at issue.

We disagree. First, Rule 8.05, by its unambiguous language, applies to a pleading in which a party is "relying upon the *violation* of a statute." Tenn. R. Civ. P. 8.05 (2003) (emphasis added). The rule speaks in terms of "violations" and "breaches" of a statute. In her answer, Wife did not

-12-

allege that section 66-1-106 of the Tennessee Code had been "violated" in any way. Second, even if Rule 8.05 could be interpreted to apply to Wife's use of the statute in this case, the rule goes on to provide that the party shall "*either* specifically refer to the statute *or* state all of the facts necessary to constitute such a breach" in order to place the opposing party on notice of reliance on the statute at issue. Tenn. R. Civ. P. 8.05 (2003) (emphasis added). While she did not specifically refer to the statute, Wife's answer contained sufficient facts to apprise Decedent's Children of her reliance on the statute.

In fact, the record reveals that it is disingenuous for Decedent's Children now to argue they were not placed on notice of Wife's reliance on the statute. In opening remarks, counsel for Wife stated to the probate court that one of the issues in this case concerned section 66-1-106 of the Tennessee Code. Wife's counsel read the statute verbatim into the record and proceeded to engage in a lengthy statement, alluding to briefs filed by the parties with the probate court, setting forth the progression of the statute to its present form. Counsel for Decedent's Children offered no objection to opposing counsel's statements, nor do we find in the record any motion filed by Decedent's Children contesting the sufficiency of Wife's pleadings. Furthermore, during closing arguments, counsel for Wife once again referred to the statute and noted the lack of a counter-argument by counsel for Decedent's Children. Once again, we note the absence of an objection by counsel for Decedent's Children during the closing arguments. To the contrary, in their Motion to Alter or Amend the probate court's judgment, Decedent's Children, instead of arguing the insufficiency of Wife's pleadings, argue that the probate court incorrectly construed the statute. For these reasons, we find this component of the second issue raised by Decedent's Children to be without merit.

## IV.
### CONCLUSION

For the reasons set forth herein, we affirm the holding of the probate court in all respects. Costs of this appeal are to be taxed to the Appellants, Valerie J. Hargis, Cathy L. Morgan, and Abbie L. Triplett, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-13-